Tonight, Ms. Gordon is now in session. Please be seated. Would the clerk call the next case, please? 322-0377, Jane Roe, appellant by Martin Lucas v. Board of Education of Community High School District 99, appellate by Erin Walsh. Thank you. Mr. Lucas, good morning. Good morning. The plaintiff, Appellant Jane Roe, in this case. Jane Roe filed a Third Amendment complaint alleging a decades-long period of a teacher at Downers Grove North High School sexually abusing multiple minor young women when they were students at the school. The allegations include sexual abuse that occurred both during school hours on school grounds, in classrooms, and other sections of the building, as well as off school hours, but at the school in extracurricular activities. There was physical touchings of abuse. There was verbal insinuations, various things that clearly were abhorrent and improper behavior between a teacher, somebody in a position of trust and power over these young women, such that what he was doing was very harmful and just awful is the simplest way I can put it. That complaint clearly spells out issues that were allowed over a decades-long time period. Now, the school district filed at the trial court level a 619 motion, ultimately, and I think there's three things that are important to remember about a motion to dismiss under 2-619. The first is the allegations in the complaint are taken as true. Everything that we have alleged in this very lengthy complaint must be taken as true at the trial court level and here, for that matter. Second, in a motion to dismiss under 2-619, it's also important to remember that you are to take that pleading as stating a proper and viable cause of action. So the first two issues that are important say, we have pled a proper complaint alleging that the school district's conduct could be considered a willful wanton in causing my client damage. But the third thing I think is just as important, especially since we're addressing a defense of tort immunity. And the third thing is, in a 2-619 motion, neither the trial court nor this court, Rabunis de Novo, is limited to the four corners of the complaint. That's especially important in this case because not only did the plaintiff file affidavits of several women outlining and detailing the allegations of abuse that they suffered, the defendant itself also filed three affidavits. They filed affidavits of the school superintendent, the school principal who was there at the time Jane Rowe was a student, and they filed an affidavit of Mr. Miller, the teacher that was alleged to have been abusing these students, who was his supervisor as well as co-worker in the music department or fine arts department. Those affidavits are really significant in this case under tort immunity because they all deny any knowledge of any of these allegations. Are you meaning Mr. Teague? Mr. Teague, yes ma'am. Yes, okay. So, yeah, so Hank Thiel was the superintendent, Miss Ward was the principal during that time period, and Mr. Teague was the music department director as well as a friend and co-worker of Mr. Miller. Those affidavits, they're not very lengthy, they're not very detailed, but their significance is saying that they had no knowledge of any of these allegations. I think the trial court's error is really ignoring what our Supreme Court reminded us in the Andrews versus the Water Rec District case. That case is a great reminder of what the analysis needs to be if you're going to try to assert discretionary immunity under 2-201. The court in Andrews reminded us that it has to be a conscious decision. It can't be an oversight and that conscious decision has to involve either the determination of the policy or effectuation of a policy. If you do not know or you claim you did not know of any of these allegations, you cannot logically state that I made a conscious decision regarding a policy determination at that point in time. It's logically impossible to square those two things together. So they ultimately defeat their own argument that immunity should apply, discretionary immunity I should say, should apply here. Yet the trial court unfortunately ignored that and instead focused on one aspect, one element of the Third Amendment complaint. In the Third Amendment complaint, there was detail about a meeting at which Jane Rowe was called to with the principal. She claims in the allegations that the principal was made aware that Mr. Miller was doing inappropriate things, but we know from the affidavit that that could not have been addressed from Ms. Ward's perspective because she's saying, I never knew this meeting would have taken place in 2006. And she's saying as of 2011 in her affidavit, she still had not known. So there is a question of fact to start with. Was it discussed or not discussed? Is she telling us the truth or not telling us the truth? But if she's not telling us the truth, how could she justify making a discretionary decision? It doesn't square together to say, I don't know, but it was discretionary. Counsel, I'm confused. You said that who were the three affidavits from? One was from Mr. Miller. No, no, no, Justice. So the three affidavits are one, the superintendent's name is Hank Field. Okay. The school principal at the time was Ms. Ward, and she gave an affidavit. She was the principal from 2005 until 2011, I believe. Okay. And then the third affidavit was from Breyer Teague. He is, and was at the time, the music department chair as well as the supervisor of Mr. Miller, who was a defendant in the underlying trial court case. So I hope that clarifies. Yes. So the trial court unduly focused on this meeting, which again, there's disputes of fact as to what that meeting would have included. But the other problem is that that meeting was only one small portion of the allegations. Again, we discussed multiple students who had similar allegations, some even more unfortunately salacious than the ones involving Jane Roe, where there was actual sexual activity going on both in school and out of school. But nevertheless, these things were happening for a couple of years for Jane Roe, but had been happening at the school for over 10 years. And the court seemed to suggest, at the trial level, seemed to suggest that, well, there would be multiple discretionary decisions made over time that would grant them immunity. But that doesn't make sense in the context of, one, again, if they're saying they never knew, they couldn't have made a conscious decision. And two, what would be the discretionary policy that was in effect that they would have been making decisions about anyway? If we assume from the complaint that you did know, it was right out in front. It was happening in the classrooms. It was happening in the music auditorium. It was happening in the band room. You saw it. Let's say you were properly trained on it, and you saw it, and you recognized it, and you didn't do anything. What would be the discretionary decision? What would be the policy you're effectuating by saying, I'm going to ignore that? And I think that's what Andrews brings us back to. That case tells us you have to make a decision that is for the government's interest, for this entity's ability to effectuate or determine a policy. There cannot be or should not be a policy that would allow a teacher to continue abusing a minor student. The defendant, again, by providing these affidavits, is basically telling the court, we want you to give us immunity, but we didn't know. And you can't have it both ways. But let's say they did know. If they did know, under what circumstance would they be immune from addressing it and reporting it? The trial court, nor the defense, ever really addressed the Second District case of Doe versus Demosthenes. That case is very instructive, because there have been some attempts to say, well, to determine if there's a reasonable suspicion, or if you suspect sexual abuse, there has to be some discretion in making that determination. Doe versus Demosthenes kind of points out that if you did that, you basically swallow the rule. The immunity gets rid of the ANCRA provision that this is a mandatory reporting. And ANCRA doesn't say, by the way, that the school would have to determine that it was true. It just says it's a reasonable suspicion. You must report it and let the professionals investigate it, the ones who don't have an interest in what's happening at the school. Because, again, there's an implication at the trial level that somehow that if they knew and didn't do anything, there had to be discretionary decisions. But that's a big jump in logic, because there could be lots of reasons why somebody like Mr. Teague would not want to report Mr. Miller. Maybe they're friends, doesn't want to see his friend get in trouble. Maybe he feels that he would get in trouble if he reported it. Maybe he feels that it wasn't so bad. We could come up with a myriad of reasons why he might ignore what he saw or what he learned as his alleged complaint. But that doesn't make it a discretionary decision that's effectuating a government policy. Nowhere near that. In the trial court, by ignoring all these allegations of this 10-year period, is basically giving a blanket immunity to the school district to say, anything we do in our observations of our employees must be discretionary. But on the other hand, if they claim they don't know, then immunity cannot apply, and really the case boils down to, would there be enough evidence for a jury to decide that this is willful and wanton conduct, that they should have known, and that they should have stopped this teacher from continuously abusing multiple women? And I will point out, if I make to the court, that in these affidavits, at least two of the affidavits, Mr. Teague and Mr. Teague, because Ms. Ward was gone by the time, they say in their affidavits they knew nothing about Miller's behavior until 2017. That's a long time to be ignoring what Mr. Miller was doing out in the open. In terms of policies, were there any things in place that said, teachers, if you know something or suspect something, you have to tell? Or was there anything where students could go if they had something going on that they didn't want to talk to their parents about, but could talk to somebody at the school? The record is pretty limited on that, because again, we never had the opportunity to do discovery in the case. There was something provided by the defense in response, as part of their motion to dismiss, say that there was a policy in place. But I can only point out that the policy was reminding the teachers that they are, in fact, mandatory reporters. And under the Act, which the policy is supposed to be in compliance with, under the Act they have to be trained in recognizing what is grooming and what is sexual abuse. So I can't give you a full answer to your question just because I didn't have the opportunity to do the discovery. Counsel, can you get into that, please, because you have very little time left. And I would like you to get into your argument with regards to the order being premature because this is a 2619 and you did not, your requests for discovery prior to ruling were denied. Right. Thank you, Justice. So as I pointed out earlier, in a 2619 motion, again, we have to assume the pleadings are correct and state a viable cause of action. So you can't imply that knowledge was there and discretion was used. So we should be allowed, we want to be able to take discovery to pose people to establish, did you know, also present witnesses who would be able to say, here's what was happening. And on top of the affidavits we had produced, which the trial court never really even addressed, but discovery would allow us to explore further this whole issue. Thank you. Thank you. Thank you very much, Mr. Lucas. You will have five minutes for rebuttal. Ms. Walsh, good morning. Good morning, Your Honors. Please support counsel. My name is Erin Walsh, and I'm here on behalf of the Board of Education, Community High School District 99. Now, as Mr. Lucas stated, this case seeks to hold the school district liable for alleged sexual abuse of a student by a former teacher, who we identify as Mr. Miller, that allegedly occurred nearly 20 years ago. The trial, to support a claim of willful and wanton conduct, plaintiff alleges the district failed to create and implement a policy related to child sexual abuse, supervise Mr. Miller, and investigate allegations of misconduct and report such conduct. Now, the trial court dismissed plaintiff's complaint, finding 2-201 immunity applied, after it had provided plaintiff with four attempts to plead willful and wanton conduct. Specifically, it found that the allegations made clear that the district exercised its discretionary authority when it adopted and implemented a policy and procedure related to handling and reporting cases of child abuse, despite any legal requirement to do so. And those policies and the procedure were attached to the district's motion to dismiss their demented complaint. So they did have places to go where to report. It was both in the student handbook and in the employee handbook as well. It also found that the district exercised discretionary authority when the principal investigated an alleged report of a sexual relationship between Mr. Miller and the plaintiff, when she summoned the plaintiff and her mother to her office to question her about the relationship to determine the veracity of the report, and when the principal determined not to report the conduct to DCFS or take any further action against Mr. Miller, including any sort of heightened supervision, because plaintiff did not confirm the alleged appropriate conduct occurred. So counsel, the creation of the policy was an exercise of discretion? Correct. And then the implementation of the policy was also an exercise of discretion? Correct. And you would agree that if there was an outcry that was made, that has to be reported to DCFS? Absolutely. And you're saying there was no outcry? There was no outcry, because ANCRA requires both under the plain language of the statute and as the courts have interpreted, there needs to be reasonable suspicion of suspected child abuse for it to occur. You would agree that an outcry is reasonable suspicion? I would agree that if there is an allegation made, which it is alleged in this complaint there was, the principal investigated that allegation and made the determination, using her discretion and independent judgment, not to report based on the plaintiff's denial of any conduct occurring. For example, if I said that I was sexually abused and told my principal that, they would not have discretion to then determine, no, that's not real credible. I think that you're saying that they would have discretion. No, that would come within the reasonable suspicion threshold. So that is where the discretion lies, whether it reaches that reasonable suspicion threshold. And the courts... So the outcry itself is not an outcry? The outcry... It would never stand out if the person who is the alleged victim says this happened. Yes. But the principal doesn't believe the alleged victim. Shouldn't the principal still go ahead and tell DCFS to do their own investigation? I think the principal has the discretion to do an investigation. However, if the plaintiff is saying that this occurred, yes, that would probably reach the reasonable suspicion threshold. That didn't occur in this case. That was my final question. Right. And to illustrate that, I think it's really important to highlight the Dover's District 230 case, where, like in this case, it was alleged that a school personnel became aware of rumors of an alleged sexual relationship, but then the plaintiff denied those rumors. And the court applied... Counsel, that didn't happen in this case. In fact, we don't really have any details... She did admit in her reply that she didn't come forward with any information. She didn't confirm that she was having an alleged relationship with Mr. Miller. That was stated in the reply brief of this court. Counsel, the biggest aspect of this case that troubles me is the denial of the opportunity to do discovery and obtain... because this is such a fact-specific case, to obtain further details, and the lack of adequate details in the record, because this is a 2619. I would say that plaintiff, again, the posture of this case has been, she has been given four opportunities to plead willful in line conduct. And the court, each and every time prior to this last, found, or granted our motion under 2615, because there was no knowledge alleged of any sort of misconduct, or any misconduct of Miller. But 2619 is a fact-based determination. Correct. Correct. And this is a situation where the school controls almost all of the evidence. I would disagree with that respectfully, because plaintiff was at the meeting with the principal. She is aware of what she told the principal, what the principal said, what occurred. She is also aware of whether she told anyone and reported the conduct, whether anyone witnessed the conduct around her, when it occurred, where it occurred. She's also relying on the alleged victims in other cases to make her claim. So presumably she can contain their own, obtain information from them, which Mr. Lucas is trying to do through their affidavits. I want to point out that the affidavits are each around 100 counts, paragraphs, and the complaint is extremely detailed. So I don't think there's any... Except we're talking about a fact situation that is not likely to engender volunteers. And without the ability to coax or compel people to attend a deposition, for example, or to depose and get further details from the affiants, it's very difficult to flush out all of the facts. The facts based on the four alleged victims, which I do want to point out that these affidavits were not included in the 3rd Amendment complaint. They were only included in the 2nd Amendment complaint. They weren't attached to the 3rd. The only affidavit that was attached to the 3rd Amendment complaint was the superintendent's affidavit saying that we had a policy in place and then attaching the actual policy. So I would say that those other affidavits really shouldn't be before this Court. But if we are discussing them, then... And sit people down in a room with a court reporter, including the individuals who submitted affidavits that are attached to the 2619. Because this is a very facts-driven case. The school district has the burden of proof with regards to immunity. And it's a situation and it's a circumstance that is not likely to engender volunteers with regards to the details. Right. Again, my only point is that there have been volunteers come forward. And those are the other victims, alleged victims. And they have issued their affidavits to support which plaintiff is relying upon. And nowhere in the affidavits is there anywhere showing that the district had knowledge of any sort of report of alleged abuse. Except for this one report that was made to the principal in 2006. Which is why we moved forward with our 2619 motion. Because the trial court had previously found that knowledge had not been sufficiently alleged by the other complaints. But because they then made this allegation saying that there was a report of sexual misconduct concerning plaintiff and the principal investigated, that opened the door to allow us to make a 2619 motion based on our tort immunity argument under 2-201. And where the principal undertook an investigation and made a discretionary determination, used her judgment not to report the conduct to DCFS or not to take further action based on the allegations, based on the conversation that she had with plaintiff. And I do want to point out that the Dabrowski case, which plaintiff emphatically relies on, also recognizes that ANCRA requires reports of credible allegations, which requires a degree of discretion. And it distinguished from the Doe v. District 230 case saying that there, the rumors of sexual abuse were denied by plaintiff herself. So there was no reason to suspect sexual misconduct. That is exactly what happened in this situation. I also want to point out, in terms of a failure to report, ANCRA, there is no private right of action under ANCRA to make a claim. So there's no duty. That is recognized in both Illinois and the Seventh Circuit. So the district exercised its discretion in determining next steps based on the information that was provided. What you're saying is no duty. There's no cause of action. No cause of action, correct. You also said no duty. Well, there isn't a duty to report. That rises, that becomes a cause of action, but there is a duty to report. There is a duty to, correct, correct. So it shouldn't now be liable 20 years later because plaintiff is alleging that she wasn't truthful or forthcoming when it was investigated by the district in 2006. With regard to the failure to... issue, which is a very difficult and personal private issue with reluctant victims, to be investigated by the Department of Children and Family Services, which are properly trained in victim-sensitive interviews, which have all of the training and resources in order to conduct a proper interview to flush out the facts and circumstances so that... And so the school district isn't supposed to do its own investigation. The school district is supposed to turn the investigation over to the professionals, and that's why they are mandatory reporters. Again, though, if the plaintiff is denying that any misconduct, denying that the reports are accurate, then what is there to report? Again, there needs to be some credibility. If the statute doesn't say any time there's an allegation of sexual misconduct, you have to report it. It says when there is, and I can quote, a reasonable cause to believe, that is what the determination is as to whether or not to report. And that discretion relies with the mandatory reporters. But isn't the answer about a reasonable... You just said it, I'm sorry. Reasonable cause to believe. That's a fact question. It's a fact question if the plaintiff is admitting that this conduct occurred, but again, that isn't the case in this situation. Because it's not alleged. It's not alleged, but then she actually admitted in a reply that she never confirmed these allegations. Well, there's a difference between confirming the allegations and outwardly denying them. And also, shouldn't the plaintiff have an opportunity with regards to the principal that called her into the office to sit that person down and conduct a discovery and say, what did you learn and from whom in order to call the plaintiff into your office and ask about these things? Where did you hear it? Who did you hear it from? And what exactly did you hear? And how pervasive was it? And how often did you hear it? Isn't that something that the plaintiff should be given an opportunity to ascertain through the deposition of the principal? Again, plaintiff was present during the meeting, so she has all these facts. She doesn't have the facts that caused the principal to call her into the office. We're assuming that the report was made. We're assuming that for purposes of our motion. Well, there's some reason why the principal called her into the office to confront her about this. Correct. And that's what opened the door to her 2-201 immunity because that is an allegation that there was potential knowledge on the district's part. But then she took that and investigated it and then made the determination based on the conversation with plaintiff that there wasn't any reason to report. It didn't reach the reasonable suspicion threshold. And again, what plaintiff is alleging is willful and wise conduct in the creation and implementation of a policy, which a policy was in place, of the supervision of Miller and the investigation of the allegations and reporting such conduct. So we've been talking about that third prong. I do, because I don't have a lot of time, would like to address the supervision component very briefly. So with regard to that, plaintiff is alleging that if the district had no knowledge, then it failed to supervise Miller. Plaintiff forgets this is not a negligent supervision claim. This is a willful and wanton claim, which requires a degree of knowledge to be able to state a claim. Again, it's important to note that procedurally his previous complaints were dismissed under 2615 because he didn't allege that knowledge component. And the third amended complaint attempted to allege that knowledge by making an allegation about this report with the principal, which then opened the door to a 2-201 immunity. I also want to note that as recognized by the trial court, Illinois cases have repeatedly applied 2-201 immunity on a motion to dismiss for employee retention and supervision, saying it's an ongoing exercise of discretion. Related to the Dover's Co. and the Reyes case, both are factually distinguishable, but also only brought up in our reply brief. So I don't believe they should be given much credence. But those cases, like the Andrews case, there, the district didn't have the discretionary authority to make these decisions. In Andrews, the employees testified that they didn't have any discretion to make these decisions. In Reyes, it was the same. The defendant didn't have discretion to allow the aggressing student to ride the bus. And in the Dover case, it didn't even discuss willful and wanton conduct or toward immunity. It discussed negligent supervision. There were also more substantive allegations of reports of misconduct that were documented, but no investigation. Here, there was an investigation, and the principal had the authority to undertake that. So finally, in conclusion, we don't believe that dismissal was premature. In all of the case law, it relied upon the district, which decided on a motion to dismiss, to allow for 2-201 immunity. For these reasons, the district respectfully requests that the court affirm the trial court's ruling dismissing plaintiff's third amended complaint with prejudice. Thank you. Are there any questions for Ms. Walsh? Just one follow-up, Ms. Walsh. Yes. What efforts were made by plaintiff to ask for discovery from the court? What? If you recall. I recall there may have been a motion seeking it, but it was denied. Prior discovery wasn't made in this case. Thank you. Correct me if I'm wrong, Marty, but I believe that was correct. Thank you. Mr. Lucas? First, I'd like to point out, in response to the argument from the defenses, even in a Wolf v. Walton case, plaintiff can allege that a defendant knew or should have known. Actual knowledge is not a prerequisite to a Wolf v. Walton claim. And both the trial court and the defense keep harping on this idea that we had to show actual knowledge. That's not accurate. In fact, the idea that for 10 years they didn't recognize what was happening right in front of them is as outrageous as knowing it and not doing anything. So that's an important factor to remember. And because they keep harping on this knowledge issue, they're constantly going back to this meeting with the principal. Again, that is one allegation in a very lengthy, specific complaint about a 10-year time frame of conduct, plus the two years specific to Jane Roe. And as Justice Albrook has pointed out, this is very fact-specific, and we needed to do discovery. And as you pointed out, Justice, why was she called into that meeting? Well, if you look at our complaint, first off, she was called into the meeting, right? It was the principal's idea, but we know from the principal's affidavit she's saying she knew nothing about sexual abuse allegations. And the complaint also says that Miller told her, deny, destroy everything. That's part of the complaint. So, of course, if she goes in, if it had been addressed, what is she going to do, right? Because she's under the spell of this teacher. And what does this young girl, she's in a position where she's being called in with her mother. What is she going to say when she's got this teacher who she's got this, you know, Svengali-type relationship, as you put it. She's going to follow what he tells her. But I think what's also important to point out, and as an officer of the court, I need to say this, because her classmate is Jane Doe, who was referenced in our complaint. That case is still pending. That case, we were allowed to do discovery. We had a different trial judge who ruled differently in that case. And there are some things that are not in this record that address this meeting. And I don't know if I should point them out because it's not part of the record, but it's a significant issue. But ultimately, in this case, that meeting is not the end-all, be-all of the complaint. If you eliminated that meeting from the complaint, we still have this pattern of this improper sexual conduct with a teacher and a student happening over two years with Jane Roe in classrooms, in the music room, in the auditorium. In school, in front of other students. In school, at rehearsals for theater programs. It's happening right in front, and they're not doing anything, and they're claiming they don't know. You can't have an immunity of discretion when you don't know. I mean, I know I'm repeating that, but they fail to address that because they want to ignore that whole aspect of the case, which is if you don't know, you can't make a conscious decision. Andrews reminds us of that, and they don't want to address it, and the trial court ignored it and ignored the whole pattern of grooming and abuse that occurred. But the fact is, we needed additional discovery, because that discovery will help us really sort out who knew what when, or are they really going to say, we didn't know? And what are these young women going to say? What are our students going to say? We needed the opportunity to find out what witnesses would the school district have listed? What witnesses would we have listed and called, besides the plaintiffs or other students that we listed in our affidavits and as part of the complaint? There's lots of discovery that would be needed to find out what was known, if known, and what was done. Counsel, what request did you make for discovery? We did file a 191B affidavit early on, and it was denied, and we were not allowed to do any discovery. There were multiple changes of trial judges throughout this case for various reasons. One judge retired, and there were just administrative changes. But ultimately, we were not allowed to do any discovery, which is why, in part, we utilized affidavits throughout the course of the motion practice. So in that light, since the defendant had the obligation, they have the burden of showing that they're protected by an immunity. They could not and did not do that in a 619 stage of the procedure, and therefore, we would ask this court to reverse the trial court's judgment, dismissing the case, and allow us to go back and conduct discovery on behalf of this plaintiff. Thank you so much for your time and attention. Thank you, Counsel. Any specifics to the discovery? It's been written in the world. Yeah, I wanted a full-blown discovery test. Okay. I'd like to do that. Thank you. Are there any other questions? No? Okay. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.